

FILED

JUN 2 6 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM SUMNER SCOTT )
3109 Grand Avenue, #183 )
Miami, Florida 33133 )
)
**Plaintiff** )
)
v. )
)
STEVEN A. FRANKEL, ESQUIRE )
3660 Washington Lane )
Hollywood, Florida 33026-4629 )
)
US COMMODITY FUTURES TRADING )
COMMISSION )
3 Lafayette Center, 1155 21st Street, NW )
Washington, D.C. 20581 )
)
_____**Defendants**_____/

Case: 1:14-cv-01081
Assigned To : Leon, Richard J.
Assign. Date: 6/26/2014
Description: Pro Se Gen. Civil

JURY DEMAND

**Jury Trial Demanded**

### SCOTT COMPLAINT FOR DAMAGES, MANDATORY INJUNCTION AND
### DECLARATORY RELIEF

NOW, COMES William Sumner Scott, the Plaintiff, pro se, to file his Complaint for

damages and for denial of First, Fourth and Fifth Amendment rights and for abuse of process,

extrinsic fraud, and deprivation of my civil rights under color of law under 42 U.S.C. §1983 and

for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 and under

_Bevins v Six Unknown Named Agents of the Federal Bureau of Narcotics,_ 403 U.S. 388 (1971)

against Steven A. Frankel, Esquire, 3660 Washington Lane, Hollywood, Florida 33026-4629 and

the United States Commodity Futures Trading Commission, 3 Lafayette Center, 1155 21st Street,

NW, Washington, D.C. 20581, as follows:

### JURISDICTION AND VENUE

1. Under United States Constitution Article III, Section 2, this Court has jurisdiction to

   determine Federal Questions raised by Federal law and applicable State law.

2. This Court also has jurisdiction to determine rights infringed under the First, Fourth and Fifth Amendments that are made applicable to the states by the Fourteenth Amendment.

3. Jurisdiction is proper pursuant to 28 U. S. C. § 1331 and for Declaratory Judgment under the Declaratory Judgment Act, 28 U. S. C. §§ 2201-2202 and for Mandatory Injunction under Federal common law and pursuant to 28 U. S. C. §§ 2201-02, and Fed. R. Civ. P. 57.

4. The material unlawful acts alleged herein were committed within this Court's jurisdiction.

5. Venue is before this Court under 28 U. S. C. § 1391.

## PARTIES

6. Plaintiff, William Sumner Scott ("Scott" or first person), was at all times, a resident of Florida and, at all times prior to the unlawful actions of the Defendants, was admitted to practice law in Florida and a holder of a Series 3 Principal and Associated Person designations pursuant to the United States Commodity Exchange Act, 7 U. S. C. §1, et seq., (the "CEAct") administered under the supervision of defendant United States Commodity Futures Trading Commission (the "CFTC").

7. The United States Commodity Futures Trading Commission (the "CFTC") is an agency of the United States government domiciled throughout the United States with its principal location at 3 Lafayette Center, 1155 21st Street, NW, Washington, D.C. 20581.

8. Steven A. Frankel, Esquire, home address is unknown but is believed to be a resident of Margate, Florida.  He has an office to practice law at 3660 Washington Lane, Hollywood, Florida 33026-4629.

## APPLICABLE DECISIONS AND RULES

9. *Creative Strategy Fund I v Prudential Securities, Inc., et al*, [1994 CFTC Decisions] Comm. Fut. L. Rep. (CCH) ¶ 26,010 (CFTC February 23, 1994), aff'd 1995 LEXIS 22 (CFTC 1995)

concerns the predetermined outcome against a claimant Commodity Pool Operator ("CPO")
by directive from the CFTC Chairperson.

10. *Scott v Prudential*, 141 F.3d 1007, 1010, (11th Cir 1998), cert. denied, 525 U.S. 1068, 119
    S.Ct. 798, 142 L.Ed.2d 660 (1999) concerns the abuse of a principal of a CPO by the United
    States Commodity Futures Trading Commission (the "CFTC") and the National Futures
    Association (the "NFA").

11. *CFTC v Maseri, et al*, before the United States District Court for the Southern District of
    Florida ("USDC So D FL") at case number 95-6970 (the "Maseri case") concerns the
    collection of Maseri's assets by Barry R. Davidson ("Davidson"), a Federal Receiver, to pay
    the creditors of Maseri in the Maseri case.

12. *Prudential Securities, Inc. v CFTC, et al*, before the USDC So D FL at case number 98-8891
    (the "Prudential case") concerns the payment of Davidson fee and costs from the assets and
    customer accounts of International Currency Exchange Corporation with the approval of
    USDC So D FL Judge Donald M. Middlebrooks ("Middlebrooks"), who knew the Davidson
    fee and costs were excessive and were for work that was substantially unrelated to the
    Prudential case at the time of his approval.

13. *Investcan, et al, v Frankel, et al*, before the USDC So D FL case number 02-60565 (the
    "Investcan case") and the appeal of my disqualification as the attorney for the plaintiffs in the
    Investcan case to the United States Court of Appeals for the Eleventh Circuit ("USCA 11[th]")
    at case number 02-16312 concern the prevention of discovery of the approval of the
    excessive fee and costs paid to Davidson, which was approved by Middlebrooks at the
    direction of the Defendant, CFTC.

14. The Florida Supreme Court suspended me from the practice of law in *Florida Bar v Scott*, 30

   So. 3rd 309 (Fla 2010), *cert denied*, 131 S. Ct. 581 (2010) (the "Opinion") at the request of

   the CFTC and Frankel to chill and discredit my criticisms of:

   a.  the decisions in *Scott v Prudential;*

   b.  the theft of ICEC and its public customer money in the *Prudential v CFTC* case without

       objection from the CFTC and Frankel;

   c.  the USDC So D FL disqualification of me as the *Investcan* Plaintiffs attorney, over their

       objection, without a hearing; and

   d.  the affirmance of that disqualification and finding of absolute Bar rule violation on the

       appeal of the *Investcan* case to the USCA 11th.

15. The First Amendment to the United States Constitution provides in relevant part:

   "Congress shall make no law . . . abridging the freedom of speech . . . and to petition

   the Government for a redress of grievances."

16. The Fourth Amendment to the United States Constitution provides in relevant part:

   "The right of the people to be secure . . . against unreasonable . . . seizures, shall not be

   violated, and no warrants shall issue, but upon probable cause, supported by oath or

   affirmation, and particularly describing the . . . things to be seized."

17. The Fifth Amendment to the United States Constitution provides in relevant part:

   "no person shall . . .be deprived of life, liberty, or property, without due process of law".

18. The Fourteenth Amendment to the U S Constitution provides in relevant part:

   "Section 1. . . "No State shall make or enforce any law which shall abridge the

   privileges or immunities of citizens of the United States; nor shall any State deprive any

   person of life, liberty, or property, without due process of law; nor deny to any person

   within its jurisdiction the equal protection of the laws."

19. Florida Constitution (1968), Article I, Section 2, Basic Rights, provides:

"All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; . . ."

Amended, general election, Nov. 5, 1974"

20. Florida Constitution (1968), Article I, Section 9, Due Process, provides:

"No person shall be deprived or life, liberty or property without due process of law . . .".

**FACTS**

21. In approximately 1990, the CFTC Chairperson issued a directive to a CFTC Administrative Law Judge ("ALJ") that was applicable to both CFTC ALJs to never rule in favor of a claimant.

22. On September 17, 2010, CFTC ALJ George H. Painter issued a Notice and Order to disclose the directive from the CFTC Chairperson to the ALJs. See Exhibit 1 attached.

23. On October 25, 2010, the CFTC issued an Order to declare that ALJ Painter lacked authority to issue the Notice and Order of September 17, 2010. See Exhibit 2 attached.

24. In 1994, ALJ Painter issued his decision in _Creative Strategy Fund I v Prudential Securities, Inc., et al_, [1994 CFTC Decisions] Comm. Fut. L. Rep. (CCH) ¶ 26,010 (CFTC February 23, 1994), aff'd 1995 LEXIS 22 (CFTC 1995) which did not disclose that Prudential Securities, Inc. ("Prudential") was obligated to provide a margin call to Creative Strategy Fund I ("Creative") once the positions in the $15,000 subaccount exceeded the margin for the positions held, which resulted in a judgment against the Fund in favor of Prudential.

25. As a direct result of the judgment against the Fund in favor of Prudential, the National Futures Association ("NFA") entered an arbitration award against me personally in favor of

Prudential that was affirmed by the USCA 11th in *Scott v Prudential Securities, Inc.*, 141 F.3d 1007, (11th Cir 1998), 23 Fla. L. Weekly Fed. C 1400, *cert denied,* 525 U. S. 1068 (1998).

26. The NFA arbitration award and subsequent affirmance by the USCA 11th are against all contractual commitments entered between the CPO, Creative, and the futures commission merchant ("FCM"), Prudential, and is also against industry custom and practice.

27. As the Prudential claim against me personally was in progress, I issued a series of press releases to explain the wrongs committed against Creative and me by the CFTC and Prudential. See Exhibit 3 for a representative sample of my press releases.

28. Without probable cause, in retaliation for my public criticisms of the Federal futures regulatory system identified in Exhibit 3, the CFTC and Steven A. Frankel, Esquire, ("Frankel") attempted to entrap me in a crime.

29. The CFTC set up a task force in Florida under the supervision of Frankel to collect evidence of forex trading fraud to present to the United States Congress to justify amendment to the *Commodity Exchange Act, 7 U. S. C. § 1, et seq.* (the "CEAct") to overcome a USCA 9th decision that ruled that forex brokerage was not included under the CEAct. See *CFTC v Frankwell, et al*, 99 F. 3d 299 (9th Cir. 1996) (the "Frankwell case").

30. In July, 1998, unknown to me, the CFTC and Frankel directed Richard E. Maseri ("Maseri") to retain me to negotiate a stockholders agreement between Frankel and Maseri as 50% shareholders to govern the operation of International Currency Exchange Corporation, a California corporation, formed by Frankel to engage in forex brokerage.

31. At the outset of the negotiations, Frankel told me he was an attorney who would represent himself. That representation was confirmed by Frankel's July 29, 1998 memo to explain that

a representation clause was not required in the Stockholder Agreement because he was an attorney and Maseri was represented.  See Exhibit 4 paragraph 4.

32. The attempt to entrap me in a crime was unsuccessful because I told Maseri, who told Frankel, that their forex brokerage had to operate within the USCA 9th to be unregistered under the exemption from registration provided by the ruling in the *Frankwell* case.  Hence, I declined to serve as general counsel of the forex brokerage operation because I was not authorized to practice law in the USCA 9th.

33. The material facts related to the stockholders agreement and the subsequent action brought by Frankel against me to remove me as the attorney for the *Investcan* case Plaintiffs are:

   a. In the stockholder agreement between Frankel and Maseri dated August 4, 1998, Frankel represented his net worth to be over one million dollars.  A person with a million dollar net worth is an *accredited investor* as that term is defined by *Securities Act of 1933, Rule 501.* 17 C. F. R. § 230.501(a)(5).

   c. *Accredited Investors* are solely responsible for their due diligence, including the background of their co-stockholder.

   d. Frankel was a promoter of the forex brokerage he formed with Maseri and, therefore, is charged with knowledge of all facts concerning his fellow promoter, Maseri.

   e. I told Maseri, who instructed me to tell Frankel, that: (a) because they intended to operate without registration under the CEAct, their forex brokerage had to be located and operate within the boundaries of the USCA 9th because only that circuit had excluded forex brokerage and trading from the CEAct, see *Frankwell*; and, (b) a forex operation in Florida would be exposed to the claim that the operation, including Maseri and Frankel, were in violation of the registration requirements imposed by the CEAct.

    f.  In response, Maseri and Frankel told me that they would operate their forex brokerage in Newport Beach, CA.

34. Frankel admitted on the record in the Bar case against me that he conducted no due diligence of Maseri.

35. In August, 1998, to distance me from the CFTC planned fraudulent operation of the forex brokerage, Frankel and Maseri formed a second forex brokerage in Nevada without my involvement called Intercontinental Currency Exchange Corporation (the California and Nevada corporations are hereinafter collectively called "ICEC").

36. Unknown to me, to expose ICEC to the CFTC claims that registration under the CEAct was required, the CFTC, Frankel, and Maseri moved the ICEC brokerage office from the USCA 9th to Weston, Florida, within the USCA 11th.

37. During the period from August to November 1998, also unknown to me, the Defendants instructed the ICEC sales force to exaggerate forex trading profit potential without explanation of the risks to induce members of the public to open forex brokerage customer accounts with ICEC.

38. The Defendants purpose in the operation of ICEC was to collect evidence of forex brokerage sales fraud to present to the United States Congress to justify an amendment to the CEAct to specifically include forex brokerage, which would overcome the decision in the *Frankwell* case which held that the CEAct did not authorize the CFTC to regulate forex brokerage.

39. ICEC opened its accounts and the customers' brokerage accounts with Prudential.

40. The operation of ICEC was terminated by the claim made to Prudential by Barry R. Davidson, Esquire ("Davidson"), a Federal receiver appointed to collect Maseri's assets to

pay to public customers of a brokerage unrelated to ICEC in the case of *CFTC v Maseri, et al*, (the "Maseri case") at United States District Court for the Southern District of Florida ("USDC So D FL") at case number 95-6970.

41. In response to the conflicting claims from Davidson and ICEC to the deposits, Prudential interplead the ICEC accounts to the USDC So D FL in the case of *Prudential v CFTC, et al* at case number 98-8891 (the "Prudential case").

42. a. Frankel was named a defendant in the Prudential case.

    b. ICEC and its customers requested Frankel to appear to explain that the claims against Maseri in the Maseri case were totally separate from ICEC and its public customers' right to restitution in the Prudential case.

    c. Frankel refused to appear in the Prudential case and to otherwise protect ICEC and its customers from the Davidson claims.

43. Maseri and Frankel agreed that the ICEC customers were entitled to 100% restitution, plus interest, and provided me with verbal and written waivers of conflicts to allow me to sue them for recovery, if for any reason, the ICEC customers did not receive 100% restitution, plus interest.

44.     a. The waiver from Maseri is not at issue in this case.

    b. The December 18, 1998, waiver from Frankel is attached as Exhibit 5.

45. In addition, on December 21, 1998, Frankel provided me with an Addendum to confirm that I had never been his attorney. See Exhibit 6.

46. Subsequently, USDC So D FL Judge Donald M. Middlebrooks, ("Middlebrooks") over ICEC and its customers' objections, without a hearing, approved the payment of the Davidson fee

and cost petition for work that was substantially for the benefit of the unrelated Maseri case from the ICEC and its customers' accounts in the Prudential case.

47. In reliance upon the Frankel representation to me that he would act as his own lawyer and the waivers from Maseri and Frankel and the addendum from Frankel to prevent a conflict claim, I agreed to represent the ICEC customers' in their claims; and, the ICEC customers brought suit against Frankel and Maseri before the USDC So D FL in the case of *Investcan, et al v Frankel, et al*, at case number 02-60565 (the "Investcan case").

48. To avoid the assertion by Frankel that it was the approval of the Davidson excessive charges that caused the Investcan plaintiffs losses, the CFTC and Middlebrooks engaged in ex parte communication to develop the plan to disqualify me as the lawyer for the Investcan plaintiffs. The CFTC believed from its experience in similar cases that the ICEC customers would be unable to replace me and the Investcan case would terminate for want of prosecution.

49. The CFTC communicated its agreement with Middlebrooks to Frankel.  Frankel filed a Motion to Disqualify me as the attorney for the Investcan plaintiffs for alleged appearance of conflicts of interest, which he knew from the prior agreements he provided to me was false.

50. Middlebrooks, to cover-up his approval of the excessive fee and cost payments to Davidson from the ICEC accounts, disqualified me as the attorney for the *Investcan* plaintiffs for an apparent conflict of interests.  See Exhibit 7.

51. The suspension of my right to practice law in Florida was the only fact relied upon to justify the revocation of my Series 3 designation by the National Futures Association (the "NFA"), which was affirmed by the CFTC at its docket number CRAA 12-02 and is currently on appeal to the United States Court of Appeals for the District of Columbia Circuit at case number 14-1050.

52. I have never engaged in forex trading.

53. My public complaints, which included press releases and specific complaints to the United
States Congress, the Florida Bar and the NFA of the conduct of the Federal futures regulatory
system, resulted in retribution in the form of removal of me from the roll of attorneys in
Florida and revocation of my registered Series 3 futures principal by the NFA at the direction
of the CFTC.

54. Frankel's Florida Bar complaint was referred to Carlos Leon, Esquire ("Leon"), Bar Counsel
for investigation.  Leon found no basis for Frankel's complaint.  See Exhibit 8.

55. Frankel referred Leon's finding of no probable cause to the CFTC.  The CFTC drafted a 110
paragraph Florida Bar complaint that the CFTC and Frankel knew contained one or more
false accusations at the time the complaint was delivered to Leon.

56. In response to the CFTC draft complaint, Leon reversed his position to file a Bar complaint
against me.

57. After the Bar complaint was filed the USCA 11th issued an unpublished decision in the
*Investcan* Plaintiffs appeal of my disqualification at case number 02-16312 which, without
being asked, elevated the apparent conflict of interest Rule violation entered by the USDC So
D FL to an absolute violation of the Florida Bar conflict rule.  See Exhibit 9 attached.

58. Frankel, with knowledge that my disqualification was entered as a result of bias and ex parte
communication against the *Investcan* Plaintiffs and me, presented the USCA 11th affirmation
of my disqualification to the Florida Supreme Court disciplinary proceeding as justification
to suspend me from the practice of law in Florida.

59. On June 10, 2010, in retaliation for my acceptance of the *Investcan* Plaintiffs' case against
Frankel and to chill my public criticisms of the CFTC and Frankel's participation in the

Federal – Florida task force to investigate forex brokerage, the Florida Supreme Court refused to look behind the Middlebrooks and USCA 11th Orders to find a conflicts of interest to suspended my right to practice law in Florida.  See *Florida Bar v Scott*, 30 So. 3rd 309 (Fla 2010), *cert denied*, 131 S. Ct. 581 (U. S. 2010) (the "Opinion").

60. The Opinion is defective on its face because it fails to disclose (a) that Frankel is an attorney who told me he would represent himself, provided a written waiver of conflicts and provided a written addendum that I had never represented him; and (b) that, as an *accredited investor* and promoter of ICEC, Frankel was solely responsible for the due diligence of Maseri, including Maseri's adverse criminal and regulatory history.

61. No statute of limitations has begun to run on the claims made in this Complaint because:

    a. The Defendants engaged in extrinsic fraud with the USDC So D FL and with the Florida Supreme Court and its integrated Florida Bar;

    b. The First, Fourth and Fifth Amendments' protections to the current rights of citizens to engage in free speech, retain their property, and otherwise be free have no statute of limitations; and

    c. People who or criticize legal system dysfunction must be protected from retribution.

62. The CFTC and Frankel, as members of the CFTC initiated Federal-Florida task force, revoked my Series 3 designation in violation of 42 U.S.C. § 1983.

63. My right to practice law in Florida, my Series 3 designation and my right to earn a living and reputation, have all been taken from me without due process of law in contravention of the Fourth and Fifth Amendments to the United States Constitution.   The U.S. Supreme Court has interpreted the Fourteenth Amendment to apply the United States Constitution Fourth and Fifth Amendment protections to the States. *Duncan v Louisiana*, 391 U.S. 145 (1968).

64. Due process of law requires more than affording a person the opportunity to appear at a hearing to confront witnesses, offer testimony, and state their defenses.   The decision makers and all opposing witnesses must be required to be free of misconduct such as the ex parte communication:

    a. which occurred between the CFTC and Middlebrooks that was communicated to Frankel to predetermine the outcome before the USDC So D FL to disqualify me as the attorney for the *Investcan* Plaintiffs; and

    b. committed by the Florida Supreme Court with the CFTC and Frankel before it removed me from the roll of attorneys admitted to practice law in Florida.

## COUNT I

### SCOTT v CFTC and FRANKEL
### Abuse of Process

65. Paragraphs 6 through 64 are incorporated in this Count I by reference as though they were published in full.

66.  The CFTC and Frankel, under color of law, with intent to cover-up the frauds they committed wrongfully had me suspended from the practice of law in Florida.   The purpose of my suspension was to deny me access to American and Florida Bar committees and to chill my Free Speech rights to inform the public of the risks of investments in futures regulated by the Federal and Florida legal systems.

67. My rights to practice law and Series 3 designations are property rights protected from wrongful taking by the Fourth and Fifth Amendments made applicable to the states by the Fourteenth Amendment.

WHEREFORE, I seek compensatory damages against the CFTC and Frankel of $2,500,000, punitive damages, and costs for the wrongful taking of my right to practice law in Florida and the wrongful taking of my Series 3 designation.

**COUNT II**
**SCOTT v FRANKEL and CFTC**
**A Bevins Action and Mandatory Injunction**

68. Paragraphs 6 through 64 are incorporated in this Count II by reference as though they were published in full.

69. This Count is brought under the rule of law announced in *Bevins v Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

70. The CFTC conducted numerous undercover operations in Florida to detect forex brokerage fraud without disclosure of its involvement.  See Sun Sentinel news article which makes no mention of the CFTC attached as Exhibit 10.

71. The CFTC has a duty to tell the truth of its undercover involvement in:

    a.   its attempt to entrap me in a crime; and

    b.   its participation in the subsequent removal of me from the roll of attorneys in Florida; and

    c.   its actions in the formation of ICEC and participation in the ICEC customer fraud on the appeal to the CFTC of the NFA revocation of my Series 3 designation by the NFA.

72. The CFTC has participated in the wrongful taking of my Series 3 designation.

    WHEREFORE, I seek an Order to:

    A.   declare that the CFTC and Frankel's actions violated my rights secured by the First Amendment to the United States Constitution; and

14

B.  provide compensatory damages to me in the amount of $2,500,000; and

C.  provide punitive damages against the CFTC and Frankel for the malicious, wanton, willful, reckless, and knowing violation of my Constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments in an amount sufficient to deter the CFTC and Frankel and others from violating the Constitutional rights of others; and

D.  provide reasonable attorney fees, expenses and costs of this action pursuant to the Equal Access to Justice Act, 5 U. S. C. § 504 and 28 U. S. C. § 2412(b).

E.  direct Frankel to submit a pleading to the Florida Supreme Court to explain the agreements reached during the meeting in my office on December 6, 1998, and the intent of his waiver and addendum he supplied to me subsequent to that meeting; and,

F.  direct the CFTC and Frankel to explain their involvement in the CFTC forex investigation that led to the frauds committed against the *Investcan* Plaintiffs and me by the USDC So D FL and the USCA 11th.

### COUNT III
### SCOTT v CFTC and FRANKEL
### Extrinsic Fraud - Federal

73. Paragraphs 6 through 64 are incorporated in this Count III by reference as though they were published in full.

74. The CFTC and Frankel engaged in ex parte communication with Middlebrooks to cause me to be disqualified as the attorney for the Investcan Plaintiffs.

WHEREFORE, I seek compensatory damages against the CFTC and Frankel of $2,500,000, punitive damages, and costs for the wrongful removal of me as the attorney for the Investcan Plaintiffs.

**COUNT IV**
**SCOTT v CFTC and FRANKEL**
**Extrinsic Fraud - Florida**

75. Paragraphs 6 through 64 are incorporated in this Count IV by reference as though they were published in full.

76. The CFTC and Frankel engaged in ex parte communication with The Florida Supreme Court to cause me to be suspended from the practice of law in Florida.

77. My right to practice law is a property right protected by the Fourth and Fifth Amendments made applicable to the states by the Fourteenth Amendment.

WHEREFORE, I seek compensatory damages against the CFTC and Frankel of $2,500,000, punitive damages, and costs for the wrongful suspension of my right to practice law in Florida.

**JURY DEMAND**

Plaintiff seeks a trial by jury of all issues so triable.

William Sumner Scott, Pro Se

3109 Grand Avenue, #183
Miami, Florida 33133

305 923-1488
04wmscott@comcast.net